OPINION
Defendant-appellant, Carmen Swider [Carmen], appeals the judgments of the Court of Common Pleas of Logan County, Ohio which granted permanent custody of her four children to the Logan County Children's Services Board [CSB].
On April 24, 1995, as a result of a referral call, CSB visited Carmen, her husband Richard Swider, Sr. [Swider], and the children Shawn Rumer, Kayla Collett, Nadine Castle and Richard Swider, Jr. [Richard]. The group had been living in one motel room for several months at the Mountain Top Inn in Bellefontaine, Ohio. Subsequent to this visit, CSB filed a complaint which alleged Kayla to be a neglected, abused and dependent child. The basis for this allegation was that Kayla sustained physical abuse from her mother, feared her mother and step-father, and experienced domestic violence towards her mother by her step- father. Further, the complaint cited to the child's living conditions as a concern, despite acknowledgement that minimal standards were being met by the parents. Additional complaints filed on behalf of Shawn, Nadine and Richard, alleged them to be dependent by virtue of their status as Kayla's siblings.
After the filing of the complaint, the first case plan for this family was generated. The goal of this plan was to maintain the children in the home and prevent removal. The plan's objectives were for Carmen and Swider to provide the children with structure, consistent discipline and supervision and for Swider to not inflict domestic violence on Carmen. General and therapeutic counseling for all parties was advised and weekly home visits from CSB were to continue. Adequate housing was identified by CSB as an area of concern for this family, despite the family's subsequent expansion into an adjoining motel room. The children's behavioral needs and Carmen and Swider's parenting skills were additional areas of concern.
On June 16, 1995, the court granted an ex parte emergency custody order which allowed the four children to be placed into the temporary care of CSB. The court based its decision on a case worker's representation that Carmen's emotional state during a scheduled home visit placed Kayla in harm's way. The other children were observed to be dirty, unkept and unsupervised in the home. The home environment was described as chaotic. The children were placed into an emergency shelter and foster homes were sought and received. At this time, an amended case plan reflecting the movement of the children was filed. The goal of returning the children to Carmen was identified.
The childrens' adjudicatory hearing on the initial complaint was held on June 30, 1995. Neither Carmen nor Swider attended this hearing, despite their receipt of notice and personal service. Disposition of this matter was rendered on July 18, 1995. At that time, the court found Kayla to be abused, neglected and dependent, and Shawn, Nadine and Richard dependent. No finding of contempt was made in regards to Carmen and her husband since they adequately explained their absence to the court. Finally, a modified case plan was approved at this time. This plan addressed the expectation that Carmen establish living arrangements which fostered a stable home environment.
Case plan modifications continued to occur. Typically, such amendments followed an emergency removal of one of the children from the foster parent's home, due to the child's extreme behavior. Throughout the course of this matter, Shawn and Kayla resided with six different families. Nadine lived with three families and for a short period of time, was admitted to Dettmer Hospital. On the other hand, Richard has stayed consistently with two families. Further amendments occurred when Swider ceased involvement with Carmen and the children upon her announcement that she was planning to seek a divorce. Carmen's introduction of a new boyfriend and hopeful step-parent, Leroy Roberts [Roberts], caused another change to the case plans. With each amended case plan, the goal of returning of the children to Carmen was stated. Emphasis continued to be placed on the parents' ability to provide structure to, discipline for, and supervision of the children. Counseling for all parties was also advised. Once again, the issues of adequate housing, the children's behavioral needs and Carmen and Swider's parenting skills were concerns cited by CSB. Additional areas of concern included Carmen's financial instability and the introduction of Roberts into the family as a father figure. Through the end of 1996, fourteen case plans had been adopted.
On January 31, 1997, CSB filed a motion requesting permanent custody of the children. The guardian ad litem joined in this motion, supporting CSB. At this time, the fifteenth case plan was submitted. The goal of this plan was to search for adoptive parents for the children. Currently, each child is residing in a foster home and has consistently lived with the family for at least thirteen months. Nadine and Richard's foster parents have allegedly expressed an interest in adoption. Shortly thereafter, CSB filed its final amended case plan which addressed CSB's fears that Carmen would leave the jurisdiction with the children. This fear was based on Carmen's lack of compliance with previous case plans coupled with CSB's recently filed motion for permanent custody.
A hearing was held on the permanent custody motion April 18 through 24, 1997. Testimony from twenty people was admitted, including CSB employees, Carmen and her mother. Further testimony was provided by several of Carmen's previous landlords and Roberts. Counselors who had worked with Carmen and Roberts, and the psychologist who assessed them also testified. Additional testimony was received from the children in camera, the childrens' current foster parents, the childrens' counselor, and the guardian ad litem.
The judge rendered his decision on August 1, 1997. In his findings, the judge granted CSB's motion for permanent custody, terminated Carmen's parental rights and responsibilities, and approved the fifteenth case plan, implementing adoption procedures. Carmen has appealed this decision. Because each child had a separate file and case number, a motion for consolidation was filed by Carmen. This Court granted that motion on November 3, 1997. Accordingly, only one complete record was presented, and in Carmen's merit brief, the following is the sole assignment of error:
 The decision of the trial court is against the manifest weight of the evidence that the appellee provided clear and convincing evidence that the permanent custody of the four children should be awarded to the Logan County Children's Services Board.
When a motion for permanent custody is made by an agency, a court acts pursuant to R.C. 2151.414(B), which states:
 The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[.]
R.C. 2151.414(E) then sets forth the guidelines for determining whether a child cannot be placed with either of the parents within a reasonable time or if the child should not be placed with the parents. This provision states:
 [T]he court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following [twelve factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]
The issue raised by Carmen's assignment of error is whether sufficient clear and convincing evidence was presented to uphold the trial court's award of permanent custody to CSB. As stated inIn re Weaver (1992), 79 Ohio App.3d 59, 64:
 Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.
When the trial court granted CSB's motion for permanent custody, it relied upon multiple provisions of R.C. 2151.414(E) to support its findings. The first factor which the trial court applied was R.C. 2151.414(E)(1), which states:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
In this case, we find support for the trial court's determination that Carmen has continuously and repeatedly failed to remedy the conditions which caused the children to be placed outside of her custody. Through the case plans, CSB has documented the foster care, medical care and transportation to visitation sessions services it has provided to the children over a twenty-two month time period. Documents also show that Carmen has been included in the development of all the case plans, except those requiring an emergency change in the placement of the child.
The case plans further document CSB's repeated attempts to provide services to Carmen which would move her closer to reunification with her children. However, a review of the record demonstrates that Carmen has declined to accept these services. Specifically, the goal of stable housing for the children has not been accomplished. CSB has shown that since the filing of the initial complaint, Carmen has resided in eight different locations in Logan, Delaware and Franklin Counties. Of these eight locations, only two were approved by CSB as appropriate places for the children to live. She has lived in motels, mobile homes and rental houses, not residing in any one location for longer than six months and on occasion, changing residences after only one month. The employees of CSB further testified that they had a difficult time keeping in contact with Carmen, because she had not always promptly notified CSB of her new address. Finally, there was no evidence that Carmen acted to accept CSB's offer of housing assistance through the agency of Metropolitan Housing, although she would have qualified for such aid.
Likewise, the testimony established that the counseling services offered by CSB were consistently rejected. In fact, the evidence showed that Carmen sought to have her attorney waive the counseling requirement. Carmen declined to attend marital counseling and counseling designed to help her with the issues surrounding her impending divorce. Additionally, counseling to aid Carmen's understanding of issues regarding her prior abuse, efforts to rebuild her life, and parenting skills were never seriously attended. Carmen did attend a parent enrichment program, yet this was the same training she had received five years earlier. Moreover, the case plan indicated that Carmen should attend the "Step Program," which she did not do. At the April hearing, a counsellor who visited with Carmen testified that Carmen had made no progress in the counseling session and that reunification with her children was not advisable.
Carmen has also not demonstrated any recognition of her childrens' special psychological, behavioral, medical, and educational needs. The children's counseling sessions did not begin until after the children were removed from Carmen's custody. Upon their removal from Carmen, the children were diagnosed with a variety of ailments. Shawn has below normal intelligence and is taking medication for attention deficit disorder, hyperactivity and depression. Kayla also has limited cognitive abilities and requires counseling for the belief that she caused her family to be torn apart. Nadine is mildly mentally retarded. Richard has had delayed speech problems. He also has had behavioral problems which, at one time, resulted in his expulsion from preschool. All four children are placed, or have at one time been placed, in special treatment foster homes. In her own testimony, Carmen stated that she has taken no steps to arrange for the continuation of the services each child is presently receiving should she regain custody and move the family to Columbus. CSB employees also testified that Carmen failed to attend any of her children's doctor appointments or visit Nadine when she was admitted to Dettmer Hospital for ten days.
Lastly, Carmen has demonstrated little effort towards achieving the goal of financial stability. The record indicates that she has had little consistency in employment over the past several years, working at the Mountain Top Inn, Mad River Mountain Resort and Convention Center and Denny's. Carmen's own testimony is that she was unable to maintain either of the residences which were approved by CSB due to high rents. These rents were approximately $500 a month, excluding utilities. However, testimony also established that when Carmen lived in motels, she was able to afford the $900 monthly living expenses. Moreover, during the entire time period in which her children have been in foster care, CSB demonstrated that Carmen provided no financial support. Thus, in view of the foregoing, we find that competent and credible evidence exists to sustain the clear and convincing evidentiary standard of R.C. 2151.414(E)(1). Consequently, the trial court's grant of CSB's permanent custody order was not in error.
Finally, we note that although the trial court relied upon multiple provisions of R.C. 2151.414(E) to justify its findings, such a determination was not necessary. According to In Re WilliamS. (1996), 75 Ohio St.3d 95, syllabus, the trial court need only to have provided sufficient evidence to support one of the R.C.2151.414(E) enumerated factors. Consequently, we decline to address the remaining R.C. 2151.414(E) factors relied upon by the trial court[1] and overrule the assignment of error.
In sum, Carmen's sole assignment of error is overruled and the judgments of the Court of Common Pleas of Logan County, Ohio, are affirmed.
Judgments affirmed.
 BRYANT and HADLEY, JJ., concur.
[1] At the same time the court terminated Carmen's parental rights and responsibilities, the court also terminated such rights and responsibilities as held by each of the fathers of these children. Specifically, the court found that each father failed to demonstrate commitment to his child by failing to regularly visit, support or communicate. R.C. 2151.414(E)(7). Further, one putative father had his rights and responsibilities terminated by virtue of the fact that he is repeatedly incarcerated and prevented from caring for the child. R.C. 2151.414.(E)(6). None of the fathers, or the putative father, have sought an appeal of this ruling.